Wm. Kelly Nash (4888)
**DENTONS DURHAM JONES PINEGAR P.C.**
3301 N. Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone:  (801) 375-6600
kelly.nash@dentons.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RYCAR TRUST; RTM5 TRUST; RYAN THOMAS MANAGEMENT COMPANY, L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> YATES FAMILY INVESTMENTS, LLLP fka YATES FAMILY INVESTMENTS, LTD., a Utah limited partnership; JEFFREY YATES, an individual; COOPER FAMILY INVESTMENTS, LP., a Utah limited partnership; FRED COOPER, an individual; CHANDLER FAMILY INVESTMENTS, LTD., a Utah limited partnership; IAN CHANDLER, an individual; WILSON FAMILY HOLDINGS, LLC, a Utah limited liability company; MARK WILSON, an individual; TIMMER FAMILY INVESTMENTS, LLLP fka TIMMER FAMILY INVESTMENTS, LTD., a Utah limited partnership; RILEY TIMMER, an individual, and DOES 1 to 10, <br><br> Defendants. | **VERIFIED COMPLAINT** <br><br><br><br> Case No. 2:23cv00732 DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiffs Rycar Trust ("**Rycar**"), RTM5 Trust ("**RTM5**") and Ryan Thomas

Management Company, L.C. ("**RTM**") complain of individual Defendants Jeffrey Yates

("**Yates**"), Fred Cooper ("**Cooper**"), Mark Wilson ("**Wilson**"), Riley Timmer ("**Timmer**"), Ian Chandler ("**Chandler**") and of their respective co-Defendant entities:  Yates Family Investments, LLLP fka Yates Family Investments, Ltd. (and dba Yates Family Investments, LP) ("**YFI**"), Cooper Family Investments, LP ("**CoFI**"), Wilson Family Holdings, LLC ("**WFH**"), Timmer Family Investments, LLLP fka Timmer Family Investments, Ltd. (and dba Timmer Family Investments, LP) ("**TFI**"), Chandler Family Investments, LLC, Chandler Family Investments 2.0, LLC and Chandler Family Investments, Ltd (and dba Chandler Family Investments, LP). (collectively, "**ChFI**") (collectively, "**Company Defendants**") and Does 1 to 10 (as yet unknown affiliated persons) (collectively, "**Defendants**") and allege as follows:

<u>Introduction</u>

1.      This is an action for damages resulting from Defendants' joint representations and non-disclosures, as individuals, employees, officers, directors and control persons, and fraudulent sale of securities to, and actions and inactions inducing the purchase thereof by, Plaintiffs at a purchase value in excess of over $10,000,000.  The subject securities were shares in ARIIX, LLC ("**ARIIX**") and its publicly held successor, NewAge, Inc. ("**NewAge**"), which related companies were, at material times, owned and managed by Defendants.  Defendants' false and deceitful sales pitches, non-disclosures and fraudulent sales of securities culminated in a bankruptcy by NewAge, whereby Defendants schemed to avoid personal liability, while usurping corporate opportunities, generating improper personal profits and converting NewAge assets, and formed and operated a company in competition with NewAge, which unlawfully acquired and utilizes ARIIX's confidential and proprietary information and technology.

<u>Parties</u>

2.   Plaintiff Rycar is and was, at all relevant times, a Utah trust organized in 2001.

3.   Plaintiff RTM5 is and was, at all relevant times, a Utah trust organized in 2004.

4.   Plaintiff RTM is an was, at all relevant times, a Utah limited liability company formed on 7/15/97, with its principal place of business at 798 Redford Dr., Provo, Utah 84605.

5.   LaDawn Painter ("**L Painter**") and Thomas Painter ("**T Painter**") were Trustees of Rycar and RTM5 at relevant times.

6.   T Painter was Plaintiffs' agent and representative at relevant times.

7.   Upon information and belief, Yates is and was, at relevant times, an individual over the age of eighteen and a resident of Utah County, Utah.  Yates was, at relevant times, a manager, officer (CFO), director and control person of ARIIX, and YFI is and was, at relevant times, a member of ARIIX.

8.   Upon information and belief, Cooper is and was, at relevant times, an individual over the age of eighteen and a resident of Davis County, Utah.  Cooper was, at relevant times, a manager, officer (CEO), director and control person of ARIIX, and CFI is and was, at relevant times, a member of ARIIX.

9.   Upon information and belief, Chandler is and was, at relevant times, an individual over the age of eighteen and a resident of Salt Lake County, Utah.  Chandler was, at relevant times, an officer (Vice President) and control person of ARIIX, and CFI is and was, at relevant times, a member of ARIIX.  Chandler Family Investments, LLC and Chandler Family Investments 2.0, LLC were Utah limited liability companies, which are believed to be affiliated with and/or which did business as Chandler Family Investments, Ltd (and dba Chandler Family Investments, LP).

10.   Upon information and belief, Wilson is and was, at relevant times, an individual over the age of eighteen and a resident of Davis County, Utah.  Wilson was, at relevant times, an

UC_6458483.1

officer (President), director and control person of ARIIX, and WFH is and was, at relevant times, a member of ARIIX.

11.     Upon information and belief, Timmer is and was, at relevant times, an individual over the age of eighteen and a resident of Salt Lake County, Utah.  Timmer was, at relevant times, a manager, officer (COO), director and control person of ARIIX, and TFI is and was, at relevant times, a member of ARIIX.

12.     Defendant Does 1 to 10 are as yet unidentified co-Defendants affiliated with the named Defendants, who are believed to have participated with, supported, assisted, aided, abetted and profited from the actions/inactions alleged herein, who Plaintiffs will seek to add as additional parties based on further discovery.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 15 U.S. Code § 78aa respecting federal securities law claims arising under the Securities and Exchange Acts.

14.     This Court has supplemental subject matter jurisdiction over the state securities law claims pursuant to 28 U.S.C. § 1367, because the claims relate to and arise out of the same course of conduct, and form part of the same case and controversy, as the federal claims over which this Court has original jurisdiction.

15.     This court has personal jurisdiction over Defendants because, at relevant times, Defendants' principal places of business were in Utah, Defendants did business in Utah, Defendants resided in Utah and/or Defendants' contacts with Utah were continuous and systematic.

UC_6458483.1

16.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 given

Defendants' foregoing contact within this District and in the State of Utah.

## GENERAL ALLEGATIONS

17.     Usana Health Sciences, Inc. ("**USANA**") is an American multi-level marketing

("**MLM**") company based in West Valley City, Utah.

18.     Near the end of 2010, Defendants Cooper, Wilson, Yates and Timmer, who were

working at USANA, resigned from their respective officer and/or sales positions with USANA to

form a competing MLM company.

19.     On or around 1/4/11, Defendants Cooper, Wilson, Yates, Timmer and Chandler,

as well as non-parties Deanna Latson and Wenhan Harry Zhang ("**Zhang**"), organized ARIIX,

LLC, a Utah limited liability company.

20.     At material times, ARIIX operated as an MLM company which created

exclusively branded products, which it marketed through independent sales representatives,

including so-called "Brand Partners".

21.     Shortly after the founding of ARIIX, Cooper became the CEO of ARIIX, Wilson

became the President of ARIIX, Yates became the CFO of ARIIX, Chandler became a Vice

President of ARIIX and Timmer became the COO of ARIIX.

22.     Thereafter, Cooper and Wilson persuaded non-party Robert Allen ("**Allen**") to

leave USANA and join ARIIX as a Chief Mindset Officer ("**CMO**").

23.     Allen travelled the world with ARIIX, which focused much of its business on the

Asia market, making presentations to Brand Partners, sales representatives, etc., whereby Allen

became familiar with Defendants' business activities and investments in ARIIX.

UC_6458483.1

24.     In the course of Allen's work for ARIIX and as an acquaintance of T Painter's, Allen invited T Painter to consider ARIIX's business activities and management practices and facilitated potential Brand Partner and/or investment discussions between Defendants Cooper, Wilson and Yates, and L Painter and T Painter, though Allen made no known affirmative representations or non-disclosures, such as alleged herein.

25.     During candid discussions with Defendants, T Painter disclosed the fact that he was managing substantial special interest trust funds on behalf of T Painter and L Painter's special needs children.

**First Round of ARIIX Investments**

26.     In or about October 2014 and periodically thereafter, Allen invited T Painter, as Plaintiffs' representative, to accompany him on a business trips, including to Japan, Taiwan and China, where Allen was building an ARIIX downline (a team of sale representatives and Brand Partners, a portion of whose sales proceeds were paid to Allen within the ARIIX MLM compensation structure), and to observe and gain more familiarity with ARIIX's business activities in part the Asia market.

27.     Though T Painter was acquainted with Defendants generally based on their USANA business dealings, T Painter met with and had further discussions with some or all of the Defendants, including Cooper and Yates, in the course of becoming acquainted with ARIIX's business activities, including regarding proposed customized money management systems for Asian distributors.

28.     Defendants Cooper, Yates and Wilson directly or indirectly invited T Painter to become a Brand Partner of ARIIX, however, T Painter declined to do so directly.  These Defendants recommended and Wilson assisted T Painter purchase a position under Allen, which

T Painter's daughter, as manager, acquired through an affiliated company name (i.e., TD Warner, LLC).

29.     In November 2014, some of the Defendants and/or Allen invited T Painter to learn more about ARIIX and to further consider the earning potential as an ARIIX Brand Partner or as a potential investor, which led to further individual and collective discussions later that month between, *inter alia*, T Painter and Cooper, Wilson and Yates.  In a coordinated meeting, Yates, on behalf of himself and the other Defendants, made, *inter alia*, the following statements of material fact to the Painters about ARIIX's finances:

   a.   ARIIX has a topline (gross) revenue of $100 million;

   b.   ARIIX has profits of 10-15% of the topline revenue;

   c.   ARIIX is far more profitable than other similar MLM businesses because it provides the products and services at a far cheaper price than its competitors, and as such, earning potential is much greater at ARIIX than at USANA;

   d.   ARIIX will generate revenue of $1,100,000,000 by 2023, based on current sales revenue and profit figures, which are expected to continue;

   e.   ARIIX is making a lot of money and is doing phenomenally well, which will continue;

   f.   Defendants were personally and collectively responsible for the tremendous success of USANA and they are now 100% committed to ARIIX to similarly insure its success;

   g.   Cooper and Wilson personally grew USANA to a $300,000,000 company, which is representative of their similar commitment to ARIIX;

h.   Many of USANA's top distributors in China are leaving or will leave USANA to join ARIIX, which will continue to grow exponentially;

i.   The valuation of ARIIX is six to ten times earnings, which is artificially below market compared to other similar MLMs, whose valuations are fifteen to eighteen times earnings (which underscores the immediate benefit to T Painter if he invests now);

j.   Defendants will continue to be completely transparent, will act honestly and be responsible and accountable for their business decisions to the investors, and will always act in the sole and best interests of ARIIX and its investors, including specifically L Painter and T Painter, if they invest in ARRIIX;

k.   The Company Defendants, as would be coordinated by himself and the other individual Defendants, were interested in selling a portion of their securities holdings in ARIIX to the Painters or their assigns (i.e., later identified as Plaintiffs).

30.   During this meeting and as augmented by the foregoing representations, Yates presented T Painter with an ARIIX pitch deck, which included a general presentation, which Yates represented was created for the purposes of introducing investors to ARIIX and raising investment or venture capital.  However, neither Yates, nor any other Defendant, provided a Private Placement Memorandum ("**PPM**"), Subscription Agreement, or any other risk disclosure statement to T Painter and/or L Painter in connection therewith.

31.   As the CFO and Founder of ARIIX, Yates also advised T Painter that he was knowledgeable regarding and had access to all of ARIIX's financial documents and knew the financial situation of the company as well as anyone else.

32.    Defendants did not disclose the inaccuracies relating to the foregoing information or the true reasons why they were willing to sell their referenced interests.

33.    T Painter reasonably and actually relied upon the foregoing information in further considering an investment in ARIIX.

34.    The foregoing representations were false and misleading.

35.    Upon information and belief, when Yates met with T Painter and L Painter in November of 2014, ARIIX did not have topline revenue of $100 Million, ARIIX did not have profits of 10-15% of revenue, ARIIX was not providing products and services at a better rate than its competitors, ARIIX was not on track to have revenue of $1.1 Billion by 2023, ARIIX was not making money, Defendants were not responsible for (and in fact had played only minor roles in) the success of USANA and its additional $300 Million growth, USANA's top distributors were not planning to join USANA, and the valuation of ARIIX was not six to ten times earnings.

36.    In November of 2014, T Painter and L Painter, as Plaintiffs' representative, had a further meeting with Yates and also met with Cooper.  In this meeting and on behalf of the Defendants, Yates reiterated the foregoing misrepresentations and also misrepresented that ARIIX was continuing to perform phenomenally well, was still making incredible money and was realizing amazing profits.  Cooper acknowledged the truthfulness of Yates' representations and neither Cooper, nor Yates, disclosed the true nature of ARIIX's financial condition.  They reiterated the misrepresentation to T Painter and L Painter that ARIIX was performing well and both stated they were lucky to have been investors at the ground level and to be investing with ARIIX given its below market valuation and tremendous success.

UC_6458483.1

37.     Shortly after it began, Wilson also joined the meeting, and he, on behalf of himself, Cooper, Yates and the other Defendants, also joined in making the following misrepresentations about ARIIX's finances at the time:

      a.  ARIIX has a top-line revenue of approximately $100 Million;

      b.  ARIIX's valuation for purposes of determining the purchase price of shares was approximately 90% of revenue;

      c.  ARIIX would hit between $200 Million and 1.3 Billion in gross revenue by 2023 and that the company's valuation would be six to eighteen times earning by that time.

      d.  Defendants would provide the Painters with a special opportunity to purchase securities from the Defendants (i.e., through their affiliated entities) to take advantage of the tremendous investment and profit to be realized by ARIIX.

38.     Defendants did not disclose the inaccuracies relating to the foregoing information or the true reasons why they were willing to sell their referenced interests.

39.     T Painter also reasonably and actually relied upon the foregoing information in further considering an investment in ARIIX.

40.     The foregoing representations were false and misleading.

41.     Based upon the misrepresentations and inducements of Yates, Cooper and Wilson during the foregoing November 2014 meetings, on 1/15/15 T Painter and L Painter made the following investments totaling $1 Million through the Rycar Trust, a Trust set up for the benefit of their special needs son, Ryan, and pursuant to written *Economic Interest Transfer Agreements* ("**EIT Agreements**") as follows:

    a.   Rycar Trust purchased 0.1% interest in ARIIX from Yates Family Investments, LP, for $90,909.09.

    b.   Rycar Trust purchased 0.34% interest in ARIIX from Wilson Family Holdings, LLC for $309,090.91.

    c.   Rycar Trust purchased 0.08% interest in ARIIX from Timmer Family Investments, LLLP for $72,272.73.

    d.   Rycar Trust purchased 0.58% interest in ARIIX from Cooper Family Investments, LP for $527.272.73.

42.    Incident to each of the foregoing securities purchase transactions, each of the respective Defendant sellers, directly and/or indirectly, confirmed the various and foregoing factual inducements underlying Defendants' sales of securities were accurate.  Defendants did not disclose the inaccuracies relating to the foregoing information or the true reasons why they were willing to sell their referenced interests.

43.    Upon information and belief, Yates' statements at the November 2014 meeting with T Painter and L Painter, as well as the repeated statements made by Cooper, Wilson and Yates thereafter, as confirmed by each seller, were false and misleading, and/or failed to disclose or state material facts necessary to make the statements not false and misleading.

44.    Upon information and belief, in November 2014 when Wilson, Cooper and Yates met with T Painter and L Painter, ARIIX did not have topline revenue of $100 Million, ARIIX did not have profits of 10-15% of revenue, ARIIX's valuation was not 90% of revenue, ARIIX was not on track to hit between $200 Million and $1.3 Billion in gross revenue, and ARIIX was not on track to have a valuation six to eighteen times earning by that time.

45.     As managers, officers, directors and/or control persons at ARIIX, Wilson, Cooper and Yates had direct and exclusive access to the ARIIX financials and knew (or should have known) these statements were false.

46.     In fact, ARIIX was struggling financially at this time, with revenues and profits far less than claimed, and the falsity of the statements made by Cooper, Wilson and Yates (for themselves and other Defendants) in November 2014, is evidence, *inter alia*, by the following:

   a.   ARIIX had at the time, and continued after the statements were made to have, cash flow issues, despite their repeated representations that ARIIX was generating $100 Million in sales with 10-15% profits;

   b.   ARIIX was seeking funding to make up for undisclosed negative cash flows; and

   c.   ARIIX never made profit distributions to investors.

**<u>Second Round of ARIIX Investments</u>**

47.     From early 2015 and through 2016, Defendants, including Cooper, Wilson, Chandler and Yates, for ARIIX and themselves provided T Painter with ARIIX updates and in connection therewith, they continued to make untrue and misleading statements of material fact related to the financial state and future of ARIIX, including the following statements:

   a.   ARIIX will generate revenue between $889 Million and $1.1 Billion in sales by 2022;

   b.   Business in China is growing dramatically and sales volumes are increasing;

   c.   ARIIX is significantly increasing its sales volume each month;

   d.   ARIIX is making tremendous amount of money and is highly profitable;

   e.   ARIIX is valued at $90 Million.

48.     Upon information and belief, when the above statements were made, current sales did not indicate that ARIIX would generate revenue between $889 Million and 1.1 Billion in sales by 2022, ARIIX's business in China was not doing well and sales were not increasing, ARIIX sales volume was not increasing each month, and ARIIX was not profitable.

49.     In fact, ARIIX continued to struggle financially, with revenues and profits not nearly as high as claimed, as evidenced by its continued issues with cash flow, lack of profits and failure to make distributions.

50.     As managers, officers, directors and/or control persons at ARIIX, the individual Defendants had direct and exclusive access to ARIIX's financials and knew (or should have known) these statements were false.

51.     On 1/27/16 and based on these and other ongoing misrepresentations, Defendants urged T Painter and L Painter to purchase an additional 1.2% interest in ARIIX for the special price of $1 Million.

52.     In connection therewith, a capitalization table of investors was discussed.

53.     Based on Defendants' foregoing misrepresentations and inducements throughout 2015 and through January of 2016, T Painter and L Painter, through the Rycar Trust, invested an additional $1 million in ARIIX, and pursuant to additional EIT Agreements as follows:

a.     Rycar Trust purchased a 0.9582% interest in ARIIX from Cooper Family Investments, L.P. for $790,172.65.

b.     Rycar Trust purchased a 0.0078% interest in ARIIX from Wilson Family Holdings, LLC for $6,474.10.

c.     Rycar Trust purchased a 0.0349% interest in ARIIX from Chandler Family Investments, Ltd. for $29,050.46.

UC_6458483.1

    d.   Rycar Trust purchased 0.2091% interest in ARIIX from Timmer Family Investments, Ltd. for $174,302.79.

    e.   Rycar Trust also purchased a 0.0349% interest in ARIIX from Chandler Family Investments, Ltd. For $29,050.46.

54.    Incident to each of the foregoing securities purchase transactions, each of the respective Defendant sellers, directly and/or indirectly, confirmed the various and foregoing factual inducements underlying Defendants' sales of securities were accurate.  Defendants did not disclose the inaccuracies relating to the foregoing information or the true reasons why they were willing to sell their referenced interests.

55.    Neither Yates, nor any other Defendant, provided a PPM, Subscription Agreement, or any other risk disclosure statement to T Painter and/or L Painter in connection therewith.

**Third Round of ARIIX Investments**

56.    Every month or so throughout 2016 and 2017 and in informal discussions with T Painter, the individual Defendants, on behalf of themselves individually and/or collectively, directly and indirectly, including through Cooper, Yates, Timmer and Wilson, continued to make representations to T Painter that ARIIX was continuing to do very well in achieving its goals, to make profits and to increase its gross revenues every month, including that ARIIX was worth at least $110,000,000 at that time.

57.    T Painter reasonably and actually relied upon the foregoing information.

58.    The foregoing representations were false and misleading.

59.    Upon information and belief, when these continued and reiterated statements were made, current sales did not indicate that ARIIX was on track to reach between $889 Million and

1.1 Billion in sales by 2022, ARIIX's business in China was not doing well nor were sales increasing, ARIIX sales volume was not increasing each month, and ARIIX was not profitable.

60.     In fact, ARIIX continued to struggle financially, with revenues and profits not well below the level represented and even further below targeted levels anticipated, as evidenced by its continued issues with flat or negative cash flow, lack of profits and failures to make distributions.

61.     As managers, officers, directors and/or control persons at ARIIX, the individual Defendants had direct and exclusive access to ARIIX's financials and knew (or should have known) these statements were false.

62.     On or around 4/10/17, Yates informed T Painter and L Painter that ARIIX had strategically moved its international profits offshore, creating a capital dividend back to its United States taxable account and lowering the effective rate from 47% to 42.5%.  Yates represented and even promised that the effective tax rate would be much lower in future years, indicating greater profits to be realized thereafter.

63.     Yates advised T Painter that additional securities could be purchased from Dewey Mackay, Timmer Family Investments, Ltd. and Yates Family Investments, Ltd.

64.     Based on Defendants', including Yates, foregoing and ongoing misrepresentations and in 2017, T Painter and L Painter invested an additional $1,281,800 in ARIIX, and pursuant to additional EIT Agreements as follows:

    a.  On 3/21/17, Ryar Trust purchased a 0.20% interest in ARIIX from Dewey Mackay for $181,800.00.

    b.  On 4/14/17, Rycar Trust purchased a 0.10% interest in ARIIX from Timmer Family Investments, Ltd. for $110,000.00.

      c.   On 4/14/17, Rycar Trust purchased a 0.90% interest in ARIIX from Yates Family Investments, Ltd. for $990,000.00.

65.    Incident to each of the foregoing securities purchase transactions, each of the respective Defendant sellers, directly and/or indirectly, confirmed the various and foregoing factual inducements underlying Defendants' sales of securities were accurate.  Defendants did not disclose the inaccuracies relating to the foregoing information or the true reasons why they were willing to sell their referenced interests.

66.    Neither Yates, nor any other Defendant, provided a PPM, Subscription Agreement, or any other risk disclosure statement to T Painter and/or L Painter in connection therewith.

67.    To summarize to date, based on the foregoing representations and from 2015-2017, the Rycar Trust invested a total of $3,281,800 in ARIIX for which the Rycar Trust obtained a 3.5% interest in ARIIX.  At no point did any Defendant present Plaintiffs or the Painters with a PPM, Subscription Agreement, or any formal security offering or risk disclosure of any kind regarding these securities purchases.

68.    Defendants made the foregoing representations to the Painters about ARIIX's financial condition, including sales and earnings, without providing any forward-looking statements or disclaimers.

69.    Despite representations to T Painter and L Painter that ARIIX had profits equaling 10-15% of total revenue, for the fiscal year ending in 2019, ARIIX only had a net income of $12,824,000 from total revenue of $222,937,000 (5.7% profit).

70.    On or around 10/26/17, Yates further represented to T Painter that ARIIX stock was valued at 1x sales for 2017 and that sales would reach $165-170 Million.

71.     In 2019 and through late 2020, T Painter inquired regarding ARIIX's financial condition, in response to which Yates downplayed, for the first time, the financial condition of ARIIX.  T Painter thereafter became interested in learning more regarding Defendants' management decision making and prior representations and sought to determine, albeit unsuccessfully, the true condition of ARIIX.  As a non-accountant, T Painter reviewed a draft K-1 for 2018, which was provided by Yates, and looked, albeit unsuccessfully, for any inconsistencies in the representations he had received from Defendants compared to ARIIX's reported information.  He did not, however, understand or conclude such existed and was given assurances none existed by Yates.

72.     Despite Defendants' various misrepresentations, beginning in 2014 and continuing for the duration of ARIIX's existence, ARIIX's projected profits were only 10-15% of topline revenue and the draft 2018 K-1 further suggested ARIIX only intended to distribute $5.3 million.  In response to T Painter's inquiries, Yates reassured him, stating these were preliminary estimates only and the real numbers to be updated would be much better.

**NewAge Stock Purchase**

73.     In or around January 2020, T Painter was informed by Cooper and Yates that ARIIX employees were developing a technology to update ARIIX's Customer Relationship Management ("**CRM**") database and payment system.  T Painter was eager to learn more about the CRM system, which he was told was ARIIX's new, highly confidential, proprietary and innovative software to track sales and commissions more accurately and effectively, and which would be known as ICONN.

74.     T Painter was told that ICONN was a software owned solely by ARIIX and developed by ARIIX's personnel at ARIIX's expense, and that ICONN had been designed to

give ARIIX a competitive advantage in the marketplace and to assist and incentive Brand

Partners and new marketing recruits, which would expand ARIIX's ongoing growth.

75.     T Painter learned that the ICONN software included a so-called "commission

engine," which kept records of sales made by ARIIX's Brand Partners and calculated

commissions due to Brand Partners based on the applicable compensation plan.

76.     ICONN also included a user feature called "smart links," which allowed ARIIX's

Brand Partners to send and receive links to a pre-populated shopping cart of products on

ARIIX's e-commerce platform.  ARIIX intended "smart links" to assist its Brand Partners with

selling ARIIX products through social media.

77.     Cooper and Yates represented that Cooper and Wuhan had been and were

integrally involved in the development of ICONN and that Cooper was an MLM compensation

genius and expert in downline binary system compensation plans, who greatly benefited ARIIX,

including state of the art benefits in the dynamic MLM industry, with the ability to offer binary

system, stair step breakaway plans and other compensation plans.  ICONN would be used

exclusively by ARIIX to capitalize on evolving marketing advantages, including through

strategic mergers or acquisitions, and ICONN would be protected through patent or other

intellectual property measures.  T Painter understood ARIIX would greatly benefit from

Cooper's exclusive provision of the ICONN design, development and commercialization

services.

78.     The foregoing representations were false, as the individual Defendants, including

specifically Cooper, had already begun an undisclosed disclosure of information pertaining to

and transfer of the ICONN software to a competing company, later learned to be Kwikclick, Inc.

("**Kwikclick**"), which had been formed by some or all of the Defendants in February 2020.

79.     Defendants did not disclose the inaccuracies relating to the foregoing information or the true nature of the ICONN development objectives and competitive interests of Kwikclick, Wilson, Cooper and/or other Defendants.

80.     In or around February 2020, ARIIX approached NewAge regarding a potential business combination.

81.     By June 2020, ARIIX and NewAge were engaged in negotiations for NewAge to acquire ARIIX's business as a going concern, including ARIIX's intellectual property and the ICONN CRM system.

82.     Upon information and belief, Cooper acted as one of ARIIX's point persons in approaching and negotiating the terms of the merger with NewAge with the knowledge and approval of some or all of the other Defendants, including Cooper, Yates and Wilson.

83.     Upon information and belief, while Cooper was negotiating the terms of the merger with NewAge on behalf of ARIIX, Cooper, Wilson and Yates were simultaneously setting up the competing Kwikclick company.

84.     In or around 2/20/20, Cooper caused Kwikclick to be organized in the State of Utah, became the Manager of Kwikclick and a majority member/owner of such.  Several of the Defendants, including Cooper, Wilson and Yates, thereafter affiliated with Kwikclick as officers and/or employees.

85.     Upon information and belief, in or around June 2020, ARIIX terminated Zhang, who until that time was ARIIX's Chief Information Officer.  Shortly after Zhang's termination, Zhang affiliated with and became the Chief Information Officer of Kwikclick.

86.     Upon information and belief, in or around June 2020, without either disclosure to or informing or getting permission from NewAge or ARIIX shareholders, Cooper directed

ARIIX to transfer a copy of the source code for ICONN to Zhang for his and Kwikclick's use in developing Kwikclick's business and at no cost to Kwikclick.

87.     Upon information and belief, Cooper directed and caused ARIIX to continue to pay Zhang's salary in order to further benefit Cooper's new company, Kwikclick.

88.     Upon information and belief, Cooper also instructed ARIIX's software development team in China to devote a significant amount of time and attention to the development of the Kwikclick software.

89.     Upon information and belief, ARIIX did not disclose to NewAge prior to the merger that its developers were devoting significant time to the development of the Kwikclick software, nor did ARIIX disclose that a copy of the ICONN software source code had been provided to Kwikclick.

90.     Upon information and belief, other ARIIX corporate resources were used to develop Kwikclick's software and otherwise advance Kwikclick's business.

91.     None of the foregoing material information regarding Cooper's affiliation with and the business of Kwikclick was disclosed to L and T Painter or Plaintiffs.

92.     In or about this time period, Yates advised T Painter of an impending merger between ARIIX and NewAge.

93.     On or around July 20, 2020, NewAge formally announced it had entered into a definitive agreement with ARIIX, whereby NewAge would acquire ARIIX and its affiliates through a combination of cash, stock and notes.  At or about this time, Cooper, published a YouTube Live Broadcast, in which he stated that NewAge, as combined with ARIIX, would gross over $600 Million in sales.

UC_6458483.1

94.     Defendants Cooper and Yates, on behalf of Defendants and ARIIX, made the following representations to Plaintiffs, among others, in an effort to gain the ARIIX shareholder approval for the merger:

    a.  After the merger, NewAge will make an additional $20 Million in annualized earnings before interest, taxes, depreciation or amortization.

    b.  After the merger, NewAge will buy products at a discount not previously available.

    c.  Cooper would be the Chairman of the Board of NewAge after the merger.

    d.  ARIIX's fair valuation for purposes of the merger will be $220,000,000.00.

95.     In connection therewith, Cooper and Yates represented to T Painter that ARIIX had more than $11 Million in working capital on hand.

96.     Based on the foregoing information, including non-disclosures by Defendants, upon which he continued to reasonably and actually rely, T Painter further invested in the NewAge business post merger, including an approximately $8,785,307 purchase of New Age shares (with additional options).

97.     Upon information and belief, the foregoing individual Defendants' statements, which were made in an attempt to gain the approval of the ARIIX shareholders, were false and misleading or failed to state material facts necessary in order to make the statements not false and misleading.

98.     Defendants had no realistic plan in place or viable method to make an additional $20 Million in annualized earnings before interest, taxes, depreciation and/or amortization.

99.     Defendants knew that NewAge would not be able to buy products at a discount not previously available.

100.    Cooper never planned to become Chairman of the Board at NewAge, and never did become such.

101.    ARIIX did not have working capital of $11 Million, but instead was undercapitalized by $18 Million.

102.    Cooper had already unlawfully and without disclosure or approval transferred the source code for the ICONN software to his competing business, Kwikclick.

103.    Defendants Cooper and Yates also represented to T Painter that ARIIX would merge at a price of between $5.50 and $6.00 per share, despite the fact that the NewAge stock actually traded at $1.74 per share on the day of the merger's announcement.

104.    Despite Defendants Cooper and Yates' further representations that ARIIX would merge at a value of $220,000,000 (at the foregoing share price), ARIIX shareholders only received 39,661,000 shares in NewAge.  Calculated based on the NewAge share price of $1.74, at which it was actually trading at the time, ARIIX's valuation upon merger was only $69,010,140.  Such actually resulted in an approximate 70% loss for Plaintiffs.

105.    T Painter invested a total of $3,281,000 in ARIIX, with a 3.5% interest in the business.  At the time of the merger in approximately May of 2021, T Painter reasonably expected to receive 3.5% of $220,000,000 or shares valued at $7,700,000, however, he only received 1,437,176 shares valued at $1.74 per share (actual trading value) for a total value of only $2,500,686.

106.    In March 2021, Yates represented to T Painter that an additional 157,208 shares of NewAge would be issued to RTM, however, such was never issued as represented.

107.    After the merger and in a further meeting with T Painter, in which T Painter expressed his utter lack of understanding and still growing skepticism, Cooper, Wilson and/or

Yates told T Painter there was nothing to worry about and represented that NewAge stock would quickly reach $20 per share in the near future, as Yates had previously represented, and encouraged Plaintiffs to cost average their basis to benefit from the promised growth.

108.    As a manager, officer, director and control person at ARIIX, Cooper and Yates (among others) had direct and exclusive access to ARIIX's financials and knew (or should have known) these statements were false and knew (or should have known) of true facts that were not disclosed to T Painter.

109.    Between July 2020 and December 2020 and in an attempt to average down their cost basis and in reliance on Cooper and Yates' ongoing statements and non-disclosures, including regarding the ICONN software's value to NewAge, NewAge's ability to increase profitability post-merger through discounted products and otherwise, NewAge's $20 Million increase in annualized earnings and that NewAge stock would reach $20 per share, Plaintiffs purchased an additional 7 million shares in NewAge for a total of $6,845,689.

110.    Unbeknownst to Plaintiffs, Defendants have taken actions, both before and after the merger, which reduced the per share value of NewAge stock to mere pennies, while benefitting Kwikclick, in which Cooper was and remains a manager, officer, director and majority shareholder, along with other officers, directors and shareholders, including Yates and Wilson.

111.    Upon information and belief, after the merger with NewAge, Cooper instructed Tyler Jones, formerly of ARIIX and NewAge's Vice President of Legal, to draft and backdate a sham agreement between ARIIX and Kwikclick regarding the ICONN source code.  No such agreement was disclosed prior to or as part of the merger.

112.     Upon information and belief, after the merger with NewAge, Cooper and the other individual Defendants continued to exert influence over all aspects of NewAge's newly combined business activities.

113.     Upon information and belief, after the merger with NewAge, Cooper became an owner and served as a director at NewAge.

114.     Upon information and belief, after the merger with NewAge, Wilson became an owner and served as President at NewAge.

115.     Upon information and belief, after the merger with NewAge, Yates served as Executive Vice President at NewAge.

116.     Upon information and belief, after the merger with NewAge, Chandler served as Greater China President.

117.     Upon information and belief, after the merger with NewAge, Timmer served as Global Head of Investor Relations.

118.     Upon information and belief, after the merger with NewAge, Cooper exercised control and led employees to believe he was a "co-CEO" by, *inter alia*, taking up residence in a large office on the top floor of NewAge's building, by attending and participating in management meetings and by guiding the strategic direction of the company.

119.     Upon information and belief, in or around February 2021, Cooper further exercised control in meeting with NewAge's then-CFO, Gregory Could and told Gould to help expedite the development of Kwikclick, NewAge needed to support Kwikclick's development effort at a cost of $200,000 per month.  At Cooper's direction, NewAge proceeded to incur this additional expense for the benefit of Kwikclick.  No contract or other obligation required this diversion of funds to Kwikclick.

UC_6458483.1

120.     Upon information and belief, on September 2, 2021 and despite NewAge's board of directors' repeated requests throughout 2021 to be kept informed of and of their need to approve any Kwikclick agreement, Brent Willis ("**Willis**") and Cooper executed a Software Licensing and Exclusivity Agreement ("**Licensing Agreement**") between NewAge and Kwikclick.

121.     Upon information and belief, NewAge's board of directors did not have the opportunity to review the Licensing Agreement before it was executed, the terms of which were highly and unconscionably favorable to Kwikclick (and Cooper) and detrimental to NewAge.

122.     Upon information and belief, a source code comparison ordered by Willis prior to entering the Licensing Agreement indicated a 95% match between the ICONN software and the Kwikclick software.

123.     Upon information and belief, the License Agreement provided that NewAge would pay Kwikclick a licensing fee of $50,000 per month and to pay substantial commissions to Kwikclick on sales of product by NewAge Brand Partners through the Kwikclick platform.

124.     Upon information and belief, both before and after NewAge and Kwikclick signed the License Agreement, individual Defendants Cooper, Wilson and Yates, among others, used corporate resources of NewAge to drive business to Kwikclick.  Cooper ensured that NewAge engaged in a campaign to train NewAge Brand Partners on how to promote Kwikclick to their downlines and encouraged all Brand Partners to finalize their sales through Kwikclick, rather than through NewAge directly.

125.     Upon information and belief, the foregoing misrepresentations regarding ARIIX's working capital and misconduct, combined with the unfavorable terms of the License

Agreement, caused NewAge's stock price to decrease and contributed to the failure of NewAge after the ARIIX acquisition, resulting in its eventual bankruptcy.

126.     Despite requests and representations to the contrary, Plaintiffs did not actually receive the merged NewAge stock until February 2021.

127.     As the NewAge stock price plummeted, Plaintiffs could not do anything to mitigate their damages, because Rule 144 of the Securities Act of 1933, as amended, prevented Plaintiffs from immediately selling the stock, as it was locked up in a "holding period."

128.     In early 2020 and to more easily manage Plaintiffs' investment portfolio, Plaintiff Rycar Trust, transferred its NewAge interests to Plaintiff RTM5 Trust, which eventually transferred all of its shares in NewAge to Plaintiff RTM.

129.     Upon information and belief, no Defendant is registered to sell securities.

130.     As outlined above, Defendants made carefully orchestrated and strategic decisions to merge ARIIX with NewAge for their own benefit and to the detriment of ARIIX investors.

131.     Upon information and belief, Defendants set up additional undisclosed companies, which Defendants owned or had an interest in and with which ARIIX would exclusively deal to purchase products on marked-up terms, to the disadvantage of ARIIX.

132.     Upon information and belief, subsequent to the merger, NewAge principals, including Defendants, schemed to unnecessarily increase the NewAge cost of goods in order to usurp, redirect and capture NewAge profits.

133.     Competing MLMs, as well as ARIIX's pre-merger statements show that the cost of goods sold for companies in this industry is typically 18%, while NewAge's cost of goods sold was pushed to 26%.

134.     The increased cost of goods sold contributed to NewAge's financial collapse.

**COUNT I – SECURITIES FRAUD (Violations of Sections 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]) – ALL DEFENDANTS**

135.    Plaintiffs incorporate paragraphs 1 through 134 as though fully set forth herein.

136.    Defendants, by engaging in the conduct described above, directly or indirectly, by the use of the means or instrumentality of interstate commerce or the mails, or of any facility of any national securities exchange, used and/or employed a device, scheme or artifice to defraud in connection with the purchase or sale of securities.

137.    Defendants, by engaging in the conduct described above, directly or indirectly, by the use of the means or instrumentality of interstate commerce or the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

138.    The statements of material fact were not accompanied by any meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements.

139.    Defendants, by engaging in the conduct described above, directly or indirectly, by the use of the means or instrumentality of interstate commerce or the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of securities, engaged in an act, practice, or course of business which operates or would operate as a fraud or deceit upon Plaintiffs.

140.    Defendants acted intentionally and knowingly with the intent to defraud Plaintiffs and/or reckless disregard of their duties to Plaintiffs and Plaintiffs' interests.

UC_6458483.1

141.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

142.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

## COUNT II – FRAUD IN THE OFFER AND SALE OF SECURITIES (Violations of 15 U.S.C. 77*l*(a)) – ALL DEFENDANTS

143.     Plaintiffs incorporate paragraphs 1 through 142 as though fully set forth herein.

144.     Defendants offered and/or sold securities to Plaintiffs by the use of and means or instruments of transportation or communications in interstate commerce or of the mails, by means of a prospectus or oral communication, which included untrue statements of material fact or omissions of material facts necessary in order to make the statements, in light of the circumstances under which they were provided, not misleading.

145.     Plaintiffs did not know the untruth or omission and could not, in the exercise of reasonable care, have known of such untruth or omission.

146.     Defendants acted intentionally and knowingly with the intent to defraud Plaintiffs and/or reckless disregard of their duties to Plaintiffs and Plaintiffs' interests.

147.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

148.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue

UC_6458483.1

to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

## COUNT III – LIABILITY OF CONTROLLING PERSONS (Violations of Sections 20(a) of the Exchange Act [15 U.S.C. § 78t])

149.    Plaintiffs incorporate paragraphs 1 through 155 as though fully set forth herein.

150.    Defendants were each controlling persons of ARIIX within the meaning of Section 20(a) of the Exchange Act.

151.    Defendants had direct involvement in the day-to-day operations of ARIIX, in reviewing and managing its regulatory and compliance, and in its accounting and reporting functions.

152.    Defendants were directly and/or indirectly involved in providing false information and certifying and approving false statements disseminated to Plaintiffs.

153.    By reason of their positions of control and authority as officers and/or directors of ARIIX, Defendants had the power and authority to direct the management and activities of ARIIX and its employees, and caused the wrongful conduct described herein.

154.    Due to Defendants' conduct, they have directly or indirectly, violated Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

155.    As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

## COUNT IV – SECURITIES FRAUD (Violation of Utah Uniform Securities Act, Utah Code § 61-1-1) – ALL DEFENDANTS

156.    Plaintiffs incorporate paragraphs 1 through 162 as though fully set forth herein.

157.     Plaintiffs' various purchases of shares in ARIIX and NewAge constitute securities pursuant to Utah Code § 61-1-13.

158.     Utah Code § 61-1-22 provides a private right of actions against a person who, in connection with the offer, sale or purchase of any security, directly or indirectly makes any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

159.     Defendants intentionally or recklessly made false statements of material fact, or failed to disclose material facts necessary to render statements made, in light of the circumstances under which they were made, not misleading.

160.     At the time Defendants made those false representations and statements and non-disclosures in connection with the sale of the shares of ARIIX and NewAge, Defendants knew or should have known the statements were false.

161.     Plaintiffs did not know that Defendants' representations were false nor did they know any of the material facts Defendants failed to disclose.

162.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

163.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

164.     Because Defendants actions as alleged herein were reckless and/or intentional, Plaintiffs are also entitled to receive treble damages, costs, and attorney fees pursuant to Utah Code § 61-1-22.

165.     Because Defendants were control persons under Utah Code § 61-1-22(4), they are personally liable for Defendants' loss.

### COUNT V – COMMON LAW FRAUD

166.     Plaintiffs incorporate paragraphs 1 through 172 as though fully set forth herein.

167.     Defendants made various false representations of existing material facts and non-disclosures about the financial state of ARIIX, its growth and the merger with NewAge.

168.     As managers, officers, directors and/or control persons of ARIIX and/or NewAge, the individual Defendants knew the representations were false or made the representations recklessly knowing that they had insufficient information upon which to make the representation.

169.     Defendants made the false representations and non-disclosures for the purpose of inducing Plaintiffs to purchase shares in ARIIX and/or NewAge.

170.     Plaintiffs, who were not managing members of ARIIX and/or NewAge, had no knowledge of the falseness of the representations or existence of undisclosed facts.Plaintiffs relied on Defendants' false representations and non-disclosures in deciding to purchase shares of ARIIX and/or NewAge.

171.     Defendants' false representations and non-disclosures regarding the financial state of ARIIX and/or NewAge and the merger between the two companies damaged Plaintiffs by inducing Plaintiffs, acting through their representative T Painter, to purchase additional shares in ARIIX and/or NewAge, which were either significantly devalued upon merger, or reduced to nearly nothing when Defendants bad acts led to NewAge's bankruptcy.

172.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

173.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

### COUNT VI – NEGLIGENT MISREPRESENTATION

174.     Plaintiffs incorporate paragraphs 1 through 180 as though fully set forth herein.

175.     Defendants' representations and non-disclosures constituted careless or negligent misrepresentations and non-disclosures of a material fact.

176.     Plaintiffs reasonably relied on the representations and non-disclosures of Defendants regarding the financial state of ARIIX, the ICONN software and the merger with NewAge made in pitch materials, personal meetings, email communications, company-wide meetings, and other communications.

177.     The Defendants had a pecuniary interest in the various transactions involving Plaintiffs purchases of ARIIX and/or NewAge shares.

178.     The Defendants were in a superior position to know the material facts related to the transactions.

179.     The Defendants should have reasonably foreseen that the Plaintiffs were likely to rely on the misrepresentations.

180.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

181.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

## COUNT VII – CIVIL CONSPIRACY

182.     Plaintiffs incorporate paragraphs 1 through 188 as though fully set forth herein.

183.     Defendants intentionally and/or negligently acted in concert and conspired to induce Plaintiffs to invest in ARIIX and NewAge based on false representations and non-disclosures about the companies' financials

184.     Plaintiffs, acting through their representatives T Painter and L Painter, actually and reasonably relied on Defendants' misrepresentations, non-disclosures and/or acts, practices, or course of business which operated or would operate as a fraud or deceit.

185.     As a direct and proximate cause of the foregoing wrongful conduct, Plaintiffs are entitled to rescission of each of the respective EIT Agreements and/or have suffered and continue to suffer damages in an amount to be determined at trial, but no less than $17,000,000 relating to their purchase of securities pursuant to the EIT Agreements and otherwise.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for relief as follows:

1.     A judgment of liability be entered in favor of Plaintiffs and against each Defendant, jointly and severally, as to each Count asserted herein;

UC_6458483.1

2.      An order be entered in favor of Plaintiffs and against each Defendant rescinding the EIT Agreements and requiring Defendants to refund all monies paid by Plaintiffs thereunder;

3.      An award of compensatory, consequential and incidental damages be entered in favor of Plaintiffs and against each Defendant, jointly and severally, as to each Count asserted herein, in an amount to be proven at trial, together with applicable pre-judgment and post judgment interest, attorneys' fees and court costs;

4.      An award of punitive damages, including treble damages, be entered in favor of Plaintiffs and against each Defendant, jointly and severally; and

5.      An award of such other and further relief as may be warranted under the circumstances.

Dated this 13th day of October, 2023.

DENTONS DURHAM JONES & PINEGAR, PC


 /s/ Wm. Kelly Nash
Wm. Kelly Nash


**VERIFICATION**

I, Thomas Painter, in my capacity as a managing and co-Trustee of the Rycar Trust and RTM5 Trust and as manager of Ryan Thomas Management Company, L.C., hereby state that I have read the foregoing Verified Complaint and verify that the foregoing allegations are true and correct to the best of my knowledge, information, and belief.

DATED October 13, 2023.


/s/ Thomas Painter
Thomas Painter
(permission to affix electronic signature received via email on 10/13/23)